The grounds of Payan, I'm not saying you're incorrect, Judge, I'm just telling you how I came to understand. You may proceed. Thank you, Your Honor. Your Honor, on behalf of Ms. Payan, I'm going to attempt to reserve two minutes for rebuttal time. We're asking that you vacate the decision of the Administrative Law Judge finding Ms. Payan not disabled because that decision is not free of legal error and the LJ's conclusions are not supported by substantial evidence of her impact. The errors we are focusing in on have to do with the way of treating physician opinion as well as reported symptoms. The Administrative Law Judge focused on the fibromyalgia and the lack of abnormal gait with decrease in strength. In making both of those conclusions, I would like to focus on theirs first. We did note in our brief that an individual who suffers from fibromyalgia may or may not be disabled and it's going to depend upon the severity of these symptoms that the claimant experiences and that's generally determined by the medical records as well as the other reports that we have in this file. Is this a determination we can make from objective evidence? Yes. Or is it subjective? The answer to that question is objective and that's a major error that was committed by the Administrative Law Judge in this case. The Social Security Administration has... Are you sure that's what you want to say? I mean, I think he did rely on objective evidence. I was thinking your brief suggested it ought to be subjective. So the question is not the new, if you will, Social Security Directive. So the Social Security Directive, which is SSR 12-2P, they talk about both objective and subjective findings and the point that they make is that fibromyalgia, and I'm going to quote from the policy rules, fibromyalgia is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months. And according to the regulations, it's objective. When we talk about fibromyalgia, we have a 1990 ACR classification and a 2010 classification. So although the pain itself is subjective, what is objective is the definition of fibromyalgia. It is the manner in which Social Security determines whether fibromyalgia is or is not a medically determinable impairment. So it seems to me the ALJ did reject Dr. Fairfax's assessment, but it was based on the fact that your client had a full range of motion and a normal gait. And to the extent that that's reliable on objective evidence, one would say that there is substantial evidence to sustain that. So what did you do wrong? The disconnect with that conclusion is fibromyalgia does not cause an abnormal gait. Fibromyalgia does not cause a loss of strength. So you cannot say that the fibromyalgia is not severe or that the fibromyalgia is not disabling based on those factors. Are there any superior objective evidence in the record that supports the conclusion that your client had a physical impairment? Absolutely. She meets the ACR criteria of utilizing the... So we're talking about fibromyalgia, and really there's no laboratory test to show it, no laboratory test to say that it's present or that it's severe. And yet we are to give some effect then to the subjective evidence. Yes, according to the policy calling and according to the case law. And we must disorientate between what's a medically determinable impairment, and here the fibromyalgia is a medically determinable impairment. That's not even in dispute. We have a rheumatologist that made the diagnosis that is special in this field. She does have the required tender point examination that is required in the 1990 criteria. If you look at the 2010 criteria, social security talks about widespread gain. She has a repeated manifestation of six or more fibromyalgia signs and symptoms. They identify those signs and symptoms as being fatigue, waking, unrefreshed, anxiety, depression, bowel symptoms, muscle pain, headaches, numbness, dizziness. She has all of those. And they talk about an exclusion of other disorders that would explain those symptoms. So if one has fibromyalgia, or at least has the symptoms of fibromyalgia, what must the ALJ do that the ALJ did not do? So the ALJ must weigh the medical opinion in accordance with the regulations. The ALJ did not apply the 20 CFR section 404. It wasn't in effect. What was not in effect? The social security direct disposition. The administrative lawyer judge's decision was granted in February 2012. The policy ruling was issued in 2012 as well. So it was after ALJ, but before it went to ALJ superiors. That's correct. Yes, I would have to agree with that. Without looking at the specific dates, I would assume that's correct. It's a decision that's issued in February. But when we look at the case law, specifically Panicky, they talk about this very issue because they're applying the 1990 criteria and the 2010 criteria. And so, at a minimum, Ms. Payne would have been entitled to a review under the 12H2B, which she apparently did not obtain from this administrative law judge. I would have to agree with you on that. The other issue I want to talk about, well, the government said that the ALJ followed 12H2B. Well, the government also is indicating that one of the signs and symptoms to show that fibromyalgia is not severe is the absence of abnormal gain, the absence of muscle weakness, the absence of decreased range of motion. To be honest with you, Judge, it's contrary to all the case law going back. It's contrary to the policy ruling. It's contrary to medical science. And although they say they don't know what they're relying on when they draw their conclusion, when we have all this authority, they just say that's incorrect. So, if you imagine another evaluation given, you start with 12H2B. That is one of the options. This court, that is one of the options. I would assume the court moves on. Well, isn't that really the only option we really have? Your Honor, I would agree with you. I mean, if we follow what you're saying. So, if you follow that aspect of what I'm saying, I'm going to answer your question, yes. I do believe that the court can take a look at the treating physician opinion. We detailed why that's entirely agreeable. We, in this case, they characterize this opinion as extreme. But, frankly, if, in fact, the ALJ characterizes the opinion based on objective evidence that should have been subjective evidence involved in it, the ALJ could still go back and reject the opinion, right? Yes, certainly. The ALJ would have to go through the record and look for specific and legitimate reasons to do that. I'm not sure it exists in this case. We took the position that it doesn't. But, you know, for the ALJ, if it were to be rejected. I think that's the answer. That's the answer. You said you had something else you wanted to talk about. I did want to talk about the rejection of reported symptoms. We do know that the standard to do that in this case is relatively high. The administrative law judge would have to show clear and convincing reasons. There's no evidence of these aggravation or malingering. There's no clear and convincing reasons. I know you brought that up. I thought you guys could articulate a rational basis for what's actually a convincing reason. So, if reported symptoms are reasonably related to the medically determinable variables, which in this case it is, then there is no evidence. I mean, there's quite a rational reason for rejection. That's correct. There's nothing about clear, convincing, substance-high standard of growth. That is correct. And that is. I'm not suggesting there is a. I am. If you read. What's wrong with the ALJ's explanation? So, in this case, the administrative law judge found his claim uncredible, saying that there was no evidence of worsening, which wasn't true. There was significant evidence of worsening. The administrative law judge, in fact, found that as of the quantitative disability, the condition had worsened to a point where employment would be unable to perform any of repeated work. So, finding it not credible, saying that there's no worsening, is an error. It's not clear and convincing reasons. The administrative law judge also focused on the lack of objective data, which we've covered. It doesn't comply with social security policy, so, I'll pass. Thank you. Thank you, your honor. Boarding your honors, we have placed the court to my most esteemed here on behalf of the granting commissioner for the social security administration. This case involves an individual with 30 years of work history, most recently at a semi-sealed position, was lately a medical assistant, a hospital admitting clerk, even a court clerk, an administrative clerk. She alleges disability based primarily, as we just discussed, fibromyalgia and also osteoarthritis, among other impairments. That's what we're focusing on today. She worked up until the date that her company was relocated out of state in April of 2008 when she was let go. She justified that she was one of the last employees to be let go on that date. And the medical record shows that there are several statements where she had been experiencing the same symptoms that she now considers disabling as early as 2006, if not prior to that date. The medical record also does not contain any evidence of treatment for these severe impairments in the 2008-2009 time frame when was found such that she became disabled. The outcome, or if we believe what Dr. Fairfax says is assessment, we would, in fact, suggest that she's disabled. Why not? If you were to take Dr. Fairfax's opinion, as it's stated, it does reach an ultimate commission, ultimate issue reserved to the commissioner, pretty much stating that she is unable to work. And it's the commissioner's decision that that is an impermissible opinion on all regulations. Well, this presents the commissioner's opinion, so I'm going to ask you a little bit of the same question. Where in the ALJ's opinion does the ALJ focus on subjective evidence? Well, the ALJ talks about subjective evidence in the context of credibility first Well, with the credibility, if you're only basing the credibility assessment based on the objective evidence in the medical record, rather than taking into account that she has fibromyalgia and osteoarthritis, and as the Social Security ruling 12.2B suggests, that's not really something you can take from objective evidence, but you've got to deal with the subjective complaints of that person. And it's a little hard to say she's incredible when the ALJ doesn't even discuss fatigue, doesn't even discuss the symptoms of fibromyalgia, doesn't discuss the pain testimony and relate it to her daily activities, doesn't determine whether the medications or treatment relate to the pain testimony. That's the worry that I have based on Social Security 12.2B, that it does not really address that new added function, if you will, of fibromyalgia. Not that I would have necessarily out there, but when you've got that right in the record, I've got to find some place where the ALJ assists it in order to disregard a third-party assessment or say that the applicant has no credibility. Certainly, Your Honor. And the ALJ does talk about some of the symptoms on prescript page 21 in the context of the credibility discussion, and that is tied to the ultimate findings in the residual functional capacity and the part that is relevant to 12.2B. It's not enough just to find that she has symptoms of fibromyalgia. The ALJ did find that to be severe heroin in this case, but there have to be symptoms of such a level of functional limitations in the record in order to be at such a level that the ALJ could find that the emergency included her to the point she was disabled and then simply adhere on the prescript page to what you find. If you could help me understand that, because it seems to me that taking Social Security Ruling 12.2B, that if you've got these ailments, you've got to discuss them and you've got to discuss why they don't really impair her. You can't just take the objective evidence that's in the record and say, well, she is disabled. You've got to go further. You've got to talk about the subjective, if you will, complaints that she says she has, and I didn't find that kind of discussion. Now, I think it's pretty clear that the ruling didn't come down until after the ALJ was through, and the first time it comes down is when it goes up the line from the ALJ. But nonetheless, would it be advantageous, if you will, to send this back and let the ALJ have a look at this based on a Social Security ruling? In this case, Your Honor, I don't think that it would serve a useful purpose because the ALJ did point to some of her complaints, some overall widespread pain. In the context of 2006 and 2008, he finds that there was not support for her claim in any of the notes, not just objective evidence. He does emphasize objective evidence throughout the opinion. That is certainly true. There are certainly statements throughout that are talking about observations, talking about her complaints to physicians and the lack thereof. But it seems to me that the ALJ recently concluded that these diseases could cause symptoms, but then didn't deal with that, just went back to the objective evidence that had nothing to do with that, and made its assessment based on the objective evidence, rather than saying, okay, this gal says fatigue. I'm going to consider whether there's fatigue, and I'm going to consider analysis. This gal says she has fibromyalgia. In the context of the medical opinions, I'm going to say why that shouldn't make any difference. This gal says she has pain. What about her daily activities? Do they show she has pain or don't they? This gal says she's on medications. Do the medications and treatment really deal with fibromyalgia, which it seems to me the ruling would require and the ALJ did not do? I understand, Your Honor. The ALJ did not discuss each of those factors in the opinion. That is true. I think it can be claimed from the opinion that he did consider generally many of those factors. I believe that the 12-2P doctor writes that he has to consider each and every single one, and only those that are relevant in the particular case. Since it was not in place at the time, I'm sorry, Your Honor. I didn't mean to confuse you. I was like, I'm sure it was true. Well, I told you. Because the 12-2P was not in place at the time, the ALJ did write this decision. It did not have that guidance to benefit from. However, it is our position that this would be consistent under either 12-2P or a later guidance. Your Honor. Mr. Pendergolf, can I talk about the residual function capacity finding? The residual function capacity finding itself? Yes, the residual function. The patient has found three jobs, don't seem to exist. I mean, I thought you might have a clue. Okay, wait for me. Yes, Your Honor. I'm trying to write it down here. I mean, it looks to me like those chances went out anyway. There were, you know, the clergyman, I don't know what's his name, Photoshop, Photoshop clerk, I still remember Photominutes. I don't think all of our clerks remember Photominutes. Has anybody used phone within the people of my age? My daughter does. I'm sorry? My daughter does, but that's outside of the practice. It's unusual, right? I think if I'm not to go out and find a job as a photo clerk, there are so many episodes it takes. Most of them are filmed in a photo processing company. That would be a hard job to find. And then there are a couple of other ones that also tend to seem to exist, actually. Well, Your Honor, the two that are most easily related to you here are the furniture rental consultant, and that job does actually exist. Right, but that takes a bunch of capacity. It's higher than what she has been able to perform. Well, actually, I would disagree. I agree with that statement. But first of all, this argument was never raised at the district court, and so it's our position that it was waived. Those courts do not need to address those arguments. But even if you do, the furniture rental consultant, the complaint is that it has been raised. It was raised at the agency? I'm sorry? Was it raised before the agency? No, it was not. The furniture rental consultant position had an SVP or a GED learning level of 3, which our position is not inconsistent with the SVP of 2. These are apples and oranges. GED levels are about vocational preparation and education. This woman had 30 years of work experience in 11th grade education, whereas it does not directly translate to an SVP of 2. Furthermore, the distinction between a GED reasoning level of 2 and 3 is a matter of three words, and whether it is slightly more complex than the other. So I'm not going to tell you what it differs in. Okay. Thank you. Thank you. We have time. We'll try to take a minute or so to make a starting comment. We'll hear from you, sir. Thank you, Your Honor. I just wanted to point out that clear and convincing standard. I would point you to the Brown-Hunter v. Coffin case, as well as the Burrell v. Coffin case and the Garrison v. Coffin case, which are all cited in the briefs. The issues are well-briefed, and I would have to agree that the Administrative Law Judge didn't have an opportunity to evaluate this claim or to drop this GP in reviewing the record. That is probably a necessary requirement. Thank you. Thank you. I appreciate your time. Thank you.
judges: Kozinski, Bybee, N.R. Smith